UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
:
STUART APPELBAUM, LENORE F. MILLER, :
JOHN WHITAKER, JACK WURM, JR., :
DONALD R. HOPKINS, MARSUE : **REPORT AND**
LANCASTER, and DAVID ARMSTRONG, : **RECOMMENDATION**
*as trustees and fiduciaries of the Retail, Wholesale and* :
*Department Store International Union and* : 20-CV-4131 (AMD) (PK)
*Industry Pension Fund,* :
:
                 Plaintiffs, :
:
                -against- :
:
WORLD CLASS BUSINESS PRODUCTS INC., :
:
             Defendant. :
:
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

      Stuart Appelbaum, Lenore F. Miller, John Whitaker, Jack Wurm, Jr., Donald R. Hopkins, Marsue Lancaster, and David Armstrong (collectively, "Plaintiffs" or the "Trustees"), as trustees and fiduciaries of the Retail, Wholesale and Department Store International Union and Industry Pension Fund (the "Fund"), bring this action against World Class Business Products Inc. ("Defendant"), alleging that it violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381 *et seq.* (*See* Amended and Supplemental Complaint, "Am. Compl.," Dkt. 11.)

      Before the undersigned on referral from the Honorable Ann M. Donnelly is Plaintiffs' Motion for Default Judgment (the "Motion"). (Dkt. 16.) For the reasons stated herein, the undersigned respectfully recommends that the Motion be GRANTED.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Amended and Supplemental Complaint (the "Amended Complaint"), the Affidavit of Sandi Mantooth in support of the Motion ("Mantooth Aff.," Dkt. 16-2), and the Declaration of Daniel Treiman in support of the Motion ("Treiman Decl.," Dkt. 16-3), unless otherwise stated, and are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The Fund is an "employee benefit plan," and Plaintiffs are the "plan sponsor" and "fiduciaries" with respect to the Fund. (*See* Am. Compl. ¶¶ 4, 7.) *See also* Section 3(3), (16)(B)(iii), 21(A) of ERISA, 29 U.S.C. § 1002(3), (16)(B)(iii), (21)(A).

The Fund was established pursuant to the terms of collective bargaining agreements between unions affiliated with the Retail, Wholesale and Department Store Union and employers who are required to make contributions to the Fund on behalf of their employees covered by the agreements. (*See* Am. Compl. ¶ 4; Mantooth Aff. ¶ 2.) The Fund provides pension benefits to covered employees, retirees, and their dependents. (*See* Am. Compl. ¶ 5; Mantooth Aff. ¶ 3.)

The Fund is operated pursuant to the terms of a Retail, Wholesale and Department Store International Union and Industry Pension Plan (the "Plan"). (*See* Am. Compl. ¶ 5; Mantooth Aff. ¶ 4; Ex. A to Am. Compl.) Defendant was a party to collective bargaining agreements with Local 1102 RWDSU/UFCW, pursuant to which Defendant was bound by the terms of the Plan and was required to pay, and did pay, contributions to the Fund on behalf of employees covered by the agreements. (*See* Am. Compl. ¶¶ 10-11; Mantooth Aff. ¶¶ 7-8.)

The Plan imposes withdrawal liability if an employer either partially or completely withdraws from the Plan after September 25, 1980. (*See* Plan at Article XII § 1.) Pursuant to the Plan, if an employer is found by a court to have defaulted on its withdrawal liability payments, and if the court awards judgment in favor of the Plan, the employer is liable for (1) any amounts to which the Plan is

entitled pursuant to Sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b);[1] and (2) "liquidated damages in the amount of 20 percent of the delinquency, but not less than interest on such delinquency." (*See* Plan at Article XII § 15(a).) Interest is calculated at the rate of 1.5% per month on each monthly amount due, from the date of the delinquency to the date the delinquency is paid. (*See* Plan at Article XII § 15(b).)

On June 29, 2018, Defendant permanently ceased to have an obligation to contribute to the Fund because Defendant ceased business operations. (*See* Am. Compl. ¶ 12.) The cessation of Defendant's obligation constituted a "complete withdrawal" from Fund. (*See* Am. Compl. ¶ 13; Plan at Article XII § 2(a)(1).)

On January 9, 2020, Plaintiffs sent Defendant a Notice and Demand for Payment of Withdrawal Liability ("Notice and Demand"), indicating that Defendant's withdrawal liability was $205,653.00. (*See* Am. Compl. ¶ 16; Notice and Demand, Ex. B to Am. Compl., at 1.) The Notice and Demand included a payment schedule of 80 quarterly payments of $1,955.00, with the first payment due on or before February 15, 2020. (*See* Am. Compl. ¶ 16; Notice and Demand at 1.) The Notice and Demand stated that the present value of the 80 payments was $82,189.00. (*See* Notice and Demand at 2.)

The Notice and Demand was returned to sender with a label from the U.S. Postal Service providing a forwarding address for Defendant. (*See* Am. Compl. ¶ 17; Ex. C to Am. Compl.) On January 28, 2020,[2] the Plaintiffs sent a second Notice and Demand to Defendant at its forwarding

---

[1] Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), states that the court shall award: "(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the [unpaid contributions]," and "(D) reasonable attorney's fees and costs …."

[2] Although the Amended Complaint states that the Second Notice and Demand was dated January 22, 2020, the document attached to the Amended Complaint shows a date of January 28, 2020. (Ex. D to Am. Compl. at ECF Page 123.)

3

address.  (*See* Am. Compl. ¶ 18; Second Notice and Demand, Ex. D to Am. Compl.)  That mailing, too, was returned to sender and marked by the U.S. Postal Service as "not deliverable as addressed." (*See* Am. Compl. ¶ 19; Ex. E to Am. Compl.)

On September 11, 2020, Plaintiffs filed the Complaint (Dkt. 1), which attached both the Notice and Demand (Ex. B to Compl. at ECF Pages 113-19) and the Second Notice and Demand (Ex. D to Compl. at ECF Pages 122-28).  Plaintiffs served the Complaint on Defendant via the New York Secretary of State on September 11, 2020.  (Dkt. 6.)  Defendant failed to answer or appear.  (*See* Plaintiff's Status Letter dated January 11, 2021, Dkt. 8.)  It also did not respond to the notices or make any withdrawal liability payments.  (*See id.*)

On January 25, 2021, Plaintiffs sent Defendant a letter notifying it of its default and demanding that it cure the default within 60 days.  (*See* Am. Compl. ¶ 23; Notice of Default, Ex. G to Am. Compl., at 2.)  The Notice of Default, with a copy of the Summons and Complaint enclosed, was sent to Defendant's business address, Defendant's service of process address listed by the New York Secretary of State, and the home address of Defendant's principal, Victor Diaso.  (*See* Am. Compl. ¶ 23; Notice of Default at 1-2.)  The mailings to Defendant's business and service of process addresses were returned to sender, but the mailing to Defendant's principal was successfully delivered on January 26, 2021.  (*See* Am. Compl. ¶ 24; Ex. H to Am. Compl.)  Counsel to Mr. Diaso later orally confirmed that Mr. Diaso received the Notice of Default.  (*See* Am. Compl. ¶ 25.)

On March 31, 2021, Plaintiffs moved for leave to file an amended complaint (Dkt. 9), which was granted (Order dated March 31, 2021), and Plaintiffs filed and served the Amended Complaint (Dkts. 11, 12).  Once again, no answer was filed.  Plaintiffs requested a Certificate of Default, which was entered on June 23, 2021.  (Dkts. 14, 15.)

The Motion was filed on June 25, 2021.  (Dkt. 16.)  As of that date, Defendant had not made any withdrawal liability payments.  (*See* Plaintiffs' Memorandum of Law in Support, "Pl. Mem.," Dkt.

4

16-1, at 8; *see also* Mantooth Aff. ¶¶ 15-16 (stating that Defendant has not made any payments toward its withdrawal liability as of June 21, 2021).)

On December 20, 2021, a status conference was held before the undersigned. According to counsel for Plaintiffs, counsel for Mr. Diaso told him that he may file an appearance on behalf of Defendant. (*See* Min. Entry dated Dec. 21, 2021.) No such appearance was filed.

## DISCUSSION

### I. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

The court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997). The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotation marks and citation omitted). The plaintiff must establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default

5

is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established …." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

**II.    Jurisdiction**

    **A.    Subject Matter Jurisdiction**

Plaintiffs allege violations of ERISA, 29 U.S.C. §§ 1001 *et seq.* Thus, the Court has original jurisdiction over Plaintiffs' ERISA claim pursuant to 28 U.S.C. § 1331, as well as Sections 502(e)-(f) and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e)-(f), 1451(c).

    **B.    Service on Defendant**

Plaintiffs properly served Defendant through the New York Secretary of State. *See* N.Y. Bus. Corp. Law § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B). (Dkt. 12; *see* Treiman Decl. ¶ 14.)

    **C.    Personal Jurisdiction**

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci*

*ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)).

New York State has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Because Defendant is a New York corporation (Am. Compl. ¶ 8) and it was properly served with the Summons and Amended Complaint (Dkt. 12), the Court has personal jurisdiction over it.

### III. Procedural Compliance with Local Civil Rules 7.1 and 55.2

As part of the Motion, Plaintiffs included a notice of motion (Dkt. 16), a memorandum of law (Dkt. 16-1), a copy of the Amended Complaint (Ex. EE to Treiman Decl.), proof of service of the Amended Complaint (Ex. FF to Treiman Decl.), a copy of the Clerk's certificate of default (Ex. GG to Treiman Decl.), a proposed judgment (Dkt. 16-4), and proof of mailing of the Motion papers to Defendant (Dkt. 17).

These filings comply with Local Civil Rules 7.1 and 55.2.

### IV. Liability under ERISA

ERISA enables participants and beneficiaries of an "employee benefit plan" or a "multiemployer plan" to seek relief for violations of, or to enforce provisions of, such a plan. *See* Sections 502(a) and 4301(a) of ERISA, 29 U.S.C. §§ 1132(a), 1451(a). ERISA defines a qualifying "employee benefit plan" as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." Section 3(3) of ERISA, 29 U.S.C. § 1002(3). A qualifying "multiemployer plan" is defined as a plan "(i) to which more than one employer is required to contribute," and "(ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more

than one employer." Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The Fund qualifies as both an "employee benefit plan" and a "multiemployer plan." (*See* Treiman Decl. ¶ 5.)

Pursuant to Section 4201(a) of ERISA, 29 U.S.C. § 1381(a), "If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." *See ILGWU Nat. Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 881 (2d Cir. 1988) ("The purpose of withdrawal liability 'is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers.'" (quoting H.R. Rep. No. 96-869, pt. 1, at 67 (1980))). Defendant ceased business operations on June 29, 2018 and, therefore, permanently ceased to have an obligation to contribute to the Fund. (*See* Am. Compl. ¶¶ 12-13; Plan at Article XII § 2(a)(1).) This complete withdrawal from the Fund triggered withdrawal liability under Section 4201(a) of ERISA, 29 U.S.C. § 1381(a).

Plan sponsors are obligated to take specific action in the event of an employer withdrawal:

(1) As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—
    (A) notify the employer of—
        (i) the amount of the liability, and
        (ii) the schedule for liability payments, and
    (B) demand payment in accordance with the schedule.

Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1). On January 9, 2020, Plaintiffs sent Defendant the Notice and Demand, which stated the amount of its withdrawal liability and demanded payment pursuant to a stated schedule, with the initial payment due by February 15, 2020. (*See* Am. Compl. ¶ 16; Notice and Demand at 1.) Because the Notice and Demand was returned as undeliverable, Plaintiff mailed the Second Notice and Demand on January 28, 2020, containing the same information. (*See* Am. Compl. ¶¶ 17-18; Ex. D to Am. Compl.) The Second Notice and Demand was also returned as undeliverable. (*See* Am. Compl. ¶ 19.) Plaintiff then attached the Notice and Demand, as well as the Second Notice and Demand, to the Complaint that was filed on September 3,

8

2020 and served on Defendant via the Secretary of State on September 11, 2020. (*See* Am. Compl. ¶ 20.) Service of the Complaint constituted notification of the required information under Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1). *See NYSA-ILA Pension Trust Fund v. Am. Stevedoring, Inc.*, No. 12 Civ. 2506 (PAC), 2014 WL 31579, at *4-5 (S.D.N.Y. Feb. 05, 2014) (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 263 (2d Cir. 1990)).

ERISA permits an employer, within 90 days after receiving withdrawal liability notice under Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), to request a review of the plan sponsor's determination of withdrawal liability and schedule of payments, identify any inaccuracy in the withdrawal liability determination, or furnish any additional relevant information to the plan sponsor. Section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A).

ERISA also requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1). If the employer does not challenge the withdrawal liability determination under Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), any arbitration must be initiated within 180 days of the plan sponsor's withdrawal liability demand. *See id.*

Upon an employer's failure to make a payment within 60 days after it is due, a plan sponsor "may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5). Plaintiffs made this demand by sending Defendant the Notice of Default on January 25, 2021, demanding that Defendant cure its default within 60 days. (*See* Am. Compl. ¶ 22.)

Defendant has not made any payment, initiated arbitration, or challenged Plaintiffs' determinations of Defendant's withdrawal liability. (*See* Am. Compl. ¶ 21; Mantooth Aff. ¶¶ 15-16.)

9

Accordingly, the undersigned respectfully recommends a finding that Defendant is liable to Plaintiffs for unpaid withdrawal liability.

V.    **Damages**

A.    **Withdrawal Liability**

Plaintiffs request that Defendant be ordered to pay withdrawal liability in the amount of $82,189.00. (Proposed Default Judgment, Dkt. 16-4, at 1.)

Using the formula provided in Section 4211(c)(3) of ERISA, 29 U.S.C. § 1391(c)(3), Plaintiffs determined that Defendant's withdrawal liability was $205,653.00, which was amortized into 80 quarterly payments of $1,955.00 each. (Notice and Demand at 1.) The present value on the due date of the first payment, February 15, 2020, is $82,189.00. (*Id.* at 1-2.) Plaintiffs attached to the Notice and Demand a letter from an actuary agreeing with Plaintiffs' determination of the "allocable unfunded vested benefit liability" of $205,653.00 and containing details of the calculations of Defendant's withdrawal liability amount, including the assumptions on which they were based. (Letter from Segal Consulting dated Oct. 3, 2019, "Segal Report," Ex. B to Am. Compl., at ECF Pages 117-19.)

According to the Fund's administrator, as of June 21, 2021, Defendant had not made any withdrawal liability payments. (*See* Mantooth Aff. ¶¶ 15-16.)

The undersigned, therefore, respectfully recommends that Plaintiffs be awarded $82,189.00 in withdrawal liability.

B.    **Interest**

In the Amended Complaint, Plaintiffs request an award of interest from February 15, 2020, the date the first delinquent payment was due, to the date on which judgment is entered. (Am. Compl. ¶ 28, p. 6.) However, in the Motion, Plaintiffs request that interest be calculated from November 15,

10

2020, "the due date of the first quarterly [payment] that was not timely made and that was due after the service of the initial Complaint in this action." (Pl. Mem. at 9.)

In accordance with Section 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2)(B), interest "shall" be awarded on any judgment for unpaid contributions. *See Benson v. Brower's Moving & Storage, Inc.*, 726 F. Supp. 31, 36 (E.D.N.Y. 1989), *aff'd*, 907 F.2d 310 (2d Cir. 1990) ("There is no question that Section 502(g)'s remedies are mandatory."). Withdrawal liability constitutes an unpaid contribution. *See* Section 4301(b) of ERISA, 29 U.S.C. § 1451(b) ("In any action … to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title).").

Pursuant to the Plan, interest on any withdrawal liability in default is calculated at the rate of 1.5% per month from the date payment is due to the date it is paid. (*See* Plan at Article XII § 15(b).) The interest due on Defendant's withdrawal liability from November 15, 2020 to June 15, 2021 is $8,629.88.[3]

Additionally, Plaintiffs are entitled to per diem interest from June 16, 2021 up to and including the date judgment is entered. A 1.5% monthly interest rate equals an 18% annual interest rate. Dividing that number by 365 days results in a daily interest rate of 0.049315%. Therefore, the daily interest due on Defendant's withdrawal liability is $40.53.[4]

---

[3] Plaintiffs incorrectly calculated interest due from November 15, 2020 through June 15, 2021 to be $9,862.72. (*See* Mantooth Aff. ¶ 18.) However, $9,862.72 is equal to eight months' worth of interest, not seven.

[4] In the Motion, Plaintiffs sought $41.10 per day from June 16, 2021 up to and including the date judgment is entered. (*See* Mantooth Aff. ¶ 18.) Plaintiffs appear to have calculated the per diem rate by dividing the annual interest rate by 360 days. On March 14, 2022, Plaintiffs filed a letter confirming that they had done so, because "the Fund office is accustomed [to] calculating interest on a monthly basis, with all months treated the same, notwithstanding their lengths." (Dkt. 20.) Nevertheless, Plaintiffs conceded that the Court should calculate the per diem rate on the basis of a 365-day year. (*See id.*) The undersigned does so here.

The undersigned respectfully recommends that Plaintiffs be awarded interest in the amount of $8,629.88, plus interest in the amount of $40.53 per day from June 16, 2021 up to and including the date judgment is entered.

### C. Liquidated Damages

Plaintiffs seek liquidated damages equal to the greater of 20% of Defendant's withdrawal liability and the amount of interest owed on that delinquency. (*See* Am. Compl. ¶ 30.) They are entitled to such liquidated damages in accordance with Article XII § 15(a) of the Plan and Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C). Twenty percent of the withdrawal liability is $16,437.80. As of the date of this Report and Recommendation, the interest is $19,694.57. Because the interest due is already greater than $16,437.80, the undersigned respectfully recommends that Plaintiffs be awarded liquidated damages equal to the total interest to which they would be entitled—$8,629.88 plus an additional $40.53 per day from June 16, 2021 up to and including the date judgment is entered.

## VI. Attorneys' Fees and Costs

Plaintiffs are entitled to payment of their reasonable attorneys' fees and costs incurred in a successful action to obtain withdrawal liability. *See* Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D). Plaintiffs seek $12,662.50 in attorneys' fees and $692.37 in costs. (*See* Treiman Decl. ¶¶ 17, 21.)

### A. Attorneys' Fees

District courts have broad discretion to determine the amount of attorneys' fees awarded, and the party requesting fees must submit documentation to support its request. *Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *18 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016). Courts must "us[e] their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a

fee award." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 298 (E.D.N.Y. 2009) (internal quotation marks and citation omitted).

"[T]he lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). Courts determine what constitutes a reasonable hourly rate through application of "the forum rule," which states that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks and citations omitted). "If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Mister Softee, Inc. v. Konstantakakos*, No. 15-CV-4770 (SJ)(SMG), 2016 WL 11445964, at *6 (E.D.N.Y. June 27, 2016), *R&R adopted*, 2016 WL 4250314 (E.D.N.Y. Aug. 11, 2016) (internal quotation marks and citation omitted). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make 'an across-the-board reduction or percentage cut, in the amount of hours.'" *Id.* (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 09-CV-0451 (SJF)(ARL), 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)). "Inadequate documentation" is another "ground[ ] for reduction of a fee award." *Bercosa Corp.*, 666 F. Supp. 2d at 299.

1. *Hourly Rate*

Plaintiffs were represented in this action by attorneys Anusha Rasalingam, Daniel Treiman, and Leo Gertner of the Friedman & Anspach firm. (*See* Treiman Decl. ¶ 17.) Plaintiffs seek an hourly rate of $700.00 for Rasalingam, $500.00 to $550.00 for Treiman, and $500.00 for Gertner. (*See id.*)

Rasalingam, a partner at Friedman & Anspach, is a 1999 graduate of Harvard Law School and has been practicing labor and employee benefits law since 2003. Treiman, an associate, is a 2017 graduate of New York University School of Law and has been practicing labor and employee benefits

13

law since 2019.  Gertner, an associate, is a 2016 graduate of New York University School of Law and has been practicing labor and employee benefits law since 2016.  (*See id.* ¶ 19.)

ERISA default matters are awarded attorneys' fees at the lower end of the range due to their "relative simplicity." *See Gesualdi v. Seacost Petroleum Prods., Inc.*, 97 F. Supp. 3d 87, 104 (E.D.N.Y. 2015). Attorneys' fees in an ERISA matter in this District were recently awarded at the hourly rate of $400.00 for partners, $375.00 for senior associates, $275.00 for junior associates, and $110.00 for paralegals. *See Gesualdi v. Scara-Mix, Inc.*, No. 14-CV-0765 (JS)(AKT), 2017 WL 5564673, at *9 (E.D.N.Y. Nov. 17, 2017).  In December 2021, hourly rates of $400.00 and $300.00 were approved for Rasalingam and Treiman.  *See Demopoulos v. Advance Transit Co.*, No. CV 20-5186 (DRH) (ARL), 2021 WL 6424599, at *4 (E.D.N.Y. Dec. 17, 2021), *R&R adopted*, 2022 WL 103677 (E.D.N.Y. Jan. 11, 2022); *see also Demopoulos v. Sweet Clover Farms Inc.*, No. 17 CV 7257 (ILG)(LB), 2019 WL 6619352, at *6 (E.D.N.Y. Oct. 29, 2019), *R&R adopted*, 2019 WL 6615338 (E.D.N.Y. Dec. 5, 2019) (awarding hourly rate of $300.00 for senior associate at the Friedman & Anspach firm).  *But see, e.g.*, *Durso v. Al-Saleh Grocery Corp.*, No. 18-cv-02008(CS)(PED), 2019 WL 1594240, at *4 (S.D.N.Y. Apr. 15, 2019) (awarding Rasalingam hourly rate of $490.00 to $515.00 and senior associate $275.00 hourly rate).

In light of the uncomplicated nature of this action and the recent rates approved in this District, the undersigned respectfully recommends that $400.00 be the hourly rate approved for Rasalingam and that $300.00 be the hourly rate approved for Treiman and Gertner.

    2.    *Hours Billed*

Rasalingam billed 2 hours, Treiman 21.5 hours, and Gertner 1 hour from August 11, 2020 to May 25, 2021.  (*See* Treiman Decl. ¶ 17; Ex. HH to Treiman Decl. (billing records).)  Rasalingam billed mainly for communicating with other Friedman & Anspach attorneys about the initial Complaint, while Treiman and Gertner billed mostly for research and drafting relating to the initial Complaint, the Amended Complaint, and the motion for leave to file the Amended Complaint.  Given that no

14

time was billed for preparing the Motion or for the December 20, 2021 status conference with the Court, the undersigned finds that the billed hours are not excessive, redundant, or unnecessary.

Thus, the presumptively reasonable fee for Rasalingam is $800, for Treiman is $6,450, and for Gertner is $300, for a total of $7,550.00. The undersigned respectfully recommends that Plaintiffs be awarded this amount in attorneys' fees.

### B. Costs

Plaintiffs seek an award of $692.37 in costs. (*See* Treiman Decl. ¶ 21.) This amount consists of the filing fee ($400.00), service of process fees ($159.30), mailing costs ($66.15), research costs ($25.52), and photocopying costs ($41.40). (*See id.*; Ex. II to Treiman Decl., Dkt. 16-3 (itemization of costs).) The undersigned takes judicial notice of the filing fee. *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85 (ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019) (awarding plaintiff the $400 filing fee after taking judicial notice of it).

The undersigned finds the costs requested to be reasonable and respectfully recommends that $692.37 in costs be awarded to Plaintiffs.

### **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that the Motion be GRANTED and that the Court award Plaintiffs:

(1) $82,189.00 in withdrawal liability;

(2) $8,629.88 in interest, plus interest of $40.53 per day from June 16, 2021 up to and including the date of judgment;

(3) liquidated damages in an amount equal to (2);

(4) $7,550.00 in attorneys' fees; and

(5) $692.37 in costs.

15

Plaintiffs are directed to mail Defendant a copy of this Report and Recommendation and file proof of service on the docket by March 16, 2022.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   March 15, 2022
         Brooklyn, New York